# Richmond.

## RICHMOND ICE CO. v. CRYSTAL ICE CO.

### MARCH 14, 1901.

#### Absent, Whittle, J.*

1. CONTRACTS—*Goods to be Manufactured—Surplus—Inability to Perform—Negligence.*—A defendant who has contracted to furnish certain goods to the plaintiff, "out of his surplus product, and so as not to interfere with existing contracts," cannot be excused from performance on the ground of inability, where the inability was the result of the defendant's failure to exercise reasonable diligence and care in putting his machinery in a condition to enable him to perform.

2. DAMAGES—*Breach of Contract to Deliver Goods.*—Under the evidence in this cause, the measure of the plaintiff's damages for the failure of the defendant to deliver goods according to contract, which the plaintiff has been compelled to purchase of another, is the difference between the contract price and the price which the plaintiff has been compelled to pay.

3. CONTRACTS—*Failure to Deliver Goods—Refusal to Accept—Damages.*—Under a contract to pay for a given quantity of ice per year, whether the whole quantity is accepted or not—the same to be delivered from day to day as the purchaser may require—the vendor is not entitled to recover for the difference between the quantity contracted for and that actually accepted where the failure to accept more was due to the inability of the vendor to furnish the ice as the parties had agreed.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered July 9, 1900, in action of *assumpsit,* wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

*Argued before Judge Whittle qualified.

The opinion states the case.

*S. S. P. Patteson*, for the plaintiff in error.

*Leake & Carter*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Both the demand asserted by the plaintiff in his declaration and the set-off filed by the defendant arise out of alleged breaches of an agreement in writing between the parties, which is as follows:

" These articles of agreement entered into this 1st day of December, 1898, by and between the Crystal Ice Company, a corporation of the State of Virginia, party of the first part, and the Richmond Ice Company, a corporation of the State of Virginia, party of the second part,

" Witnesseth, that the said parties hereto have mutually agreed and covenanted, and hereby do mutually agree and covenant with and to each other in manner following, to-wit:

" First. That said party of the first part, for the considerations hereinafter mentioned will, from year to year, for the period of four years from date, that is to say, till November 30, 1902, furnish the said party of the second part, to be sold by it to the Mutual Ice Delivery Company, six thousand (6,000) tons of ice *per annum*, on the following terms and conditions:

" Said ice to be delivered at the platform of said party of the first part to the wagons of the Mutual Ice Delivery Company for account of the party of the second part. The price to be paid said party of the first part is two dollars and thirty cents ($2.30) per ton of two thousand pounds. Payment is to be made to the party of the first part by the Mutual Ice Delivery Company on the 15th of each month, for all ice furnished under this

agreement during the previous calendar month in a manner similar to that adopted in settling with the Rosenegk Brewing Company for ice furnished by it for account of Mrs. Jane King; that is to say, the Mutual Ice Delivery Company is to pay the party of the first part on the 15th of each month two dollars and thirty cents ($2.30) per ton for all ice furnished it during the previous month on account of the party of the second part, and is to pay the party of the second part the difference between the price of two dollars and thirty cents ($2.30) per ton, and the price at which the party of the second part has agreed to furnish to the Mutual Ice Delivery Company.

" Second. Said ice is to be furnished by the party of the first part from day to day out of its surplus product, and the furnishing of said ice is not to interfere with furnishing its own quota to the Mutual Ice Delivery Company.

" Third. The party of the second part hereby agrees to take from the party of the first part during the time specified six thousand (6,000) tons of ice *per annum* at two dollars and thirty cents ($2.30) per ton, and, in consideration of the price at which said ice is to be furnished, the party of the second part furthermore agrees to pay the party of the first part at the rate of two dollars and thirty cents ($2.30) per ton for six thousand (6,000) tons of ice *per annum*, during the term of four years from date, whether the party of the second part takes six thousand (6,000) tons *per annum* or not, payment for the excess, if any, over what is actually furnished the Mutual Ice Delivery Company for account of the party of the second part to be made by the party of the second part to the party of the first part on January 15th of each year during the term specified, viz., the period of four years from date hereof."

At the time the agreement was entered into, the Mutual Ice Delivery Company mentioned therein was engaged in selling and delivering ice to consumers, and had a contract with the plaintiff,

the defendant, and two other companies or firms to furnish the ice which it needed to supply its customers. By that contract the plaintiff was bound to furnish thirty-two *per cent.*, the defendant thirty-eight *per cent.*, and each of the other two companies fifteen *per cent.* of the ice required by the Mutual Ice Delivery Company for its purposes.

The plaintiff neither manufactured, nor put up ice. Being under the necessity, therefore, of purchasing ice to keep and perform its contract with the Mutual Ice Delivery Company, it entered into the agreement of December 1, 1898, by which the defendant undertook to furnish the plaintiff's quota of ice to the extent of six thousand tons, in the manner and upon the terms therein stipulated, and the plaintiff agreed to pay for that amount of ice whether taken or not.

For the years 1897 and 1898 the plaintiff had somewhat similar agreements with the defendant. In each of those contracts the defendant had agreed to furnish five thousand tons of ice to the Delivery Company for the plaintiff, from time to time, of its surplus product, but to be furnished so as not to interfere with the defendant's furnishing its own quota to the Delivery Company. Those agreements contained a further provision not found in the agreement of December 1, 1898, that at no time should more ice be demanded of the defendant than could be furnished from its ice machines, after furnishing its own quota to the Delivery Company. During those years the defendant manufactured ice upon two machines only; but in the latter part of the year 1898, and before the agreement in question was entered into, the defendant determined to construct another machine, and did so during the winter and spring of the year 1899. One of the objects in constructing the new machine was to enable the defendant to furnish the ice it agreed to sell the plaintiff.

During the early part of June, 1899, the defendant did not furnish the plaintiff's quota of ice to the Mutual Ice Delivery

Company, and the plaintiff was compelled to purchase ice from other parties, and at higher prices, in order to keep and perform its contract with the Mutual Ice Delivery Company.

To recover damages for that alleged breach of the agreement of December 1, 1898, this action was brought.

The defendant insists that, under the terms of that agreement, it was only bound to furnish ice to the Mutual Ice Delivery Company for the plaintiff out of its surplus product, and so as not to interfere with furnishing its own quota to that company, and that, during the period when it failed to furnish the plaintiff's quota of ice, its surplus product was not sufficient to furnish more ice than it did furnish, without interfering with its own contract with the Mutual Ice Delivery Company, and asked the court to so instruct the jury, which was done by giving the defendant's instruction numbered 1.

The giving of that instruction is assigned as error. The objection urged to it is that it told the jury that the defendant was not liable for failing to furnish the plaintiff's quota of ice during the period in question, if the defendant did not have a surplus product of ice on hand, although its failure to have a surplus was its own fault.

There is evidence tending to show that the defendant, by the exercise of ordinary diligence, in putting in its new machine for the manufacture of ice, could have had all three of its ice machines in operation in time to have furnished the plaintiff's quota of ice during the period in question.

The only limitation on the defendant's obligation to furnish the ice was that it was to be out of its surplus product, and was not to interfere with its prior contract with the Mutual Ice Delivery Company, but that did not relieve it from the duty of exercising ordinary diligence in manufacturing the ice which it had undertaken to furnish, and only protected it from liability in the event that it was unable to furnish it without default on its part, and the instruction was erroneous in not so informing·

the jury.  See *James River, &c. Co.* v. *Adams,* 17 Gratt. 427; *Taylor* v. *Caldwell,* 113 E. C. L. 824;  *Howell* v. *Coupland,* Queen's Bench, L. R. 9 Q. B. 462.

If the defendant's inability to furnish the plaintiff's quota of ice from day to day to the Mutual Ice Delivery Company was the result of the defendant's failure to exercise reasonable diligence and care in putting its machines in a condition to manufacture a sufficient quantity of ice to enable it to furnish what it had contracted to furnish from day to day, then it was liable to the plaintiff for such breach of contract.   The defendant knew, as the evidence shows, that, under the contracts which it and the plaintiff had with the Mutual Ice Delivery Company to furnish ice, if either failed to furnish its quota as called for, the Mutual Ice Delivery Company was authorized to purchase so much ice as was necessary to fill the quota of the company so failing, and charge that company with the cost of the ice so purchased.   In so far, therefore, as the defendant was in fault in not furnishing the plaintiff's quota of ice to the Mutual Ice Delivery Company it was responsible to the plaintiff for the difference between $2.30 per ton, the price at which the defendant had agreed to furnish it and the price per ton which the plaintiff was compelled to pay in order to keep and perform its contract with the Mutual Ice Delivery Company.

The defendant's claim of set-off is for the price of one thousand and twenty-three 101-1000 tons of ice, being the residue of the six thousand tons which the plaintiff agreed to pay for whether taken or not, after deducting the ice actually furnished by the defendant and the Transparent Ice Company with the consent of the defendant.

If the defendant had been in a condition to furnish from day to day the plaintiff's quota of ice to the Mutual Ice Delivery Company during the year in which the ice was to be delivered, and the plaintiff had failed to take the six thousand tons, the defendant would, under the provisions of the agreement of

December 1, 1898, be entitled to pay for the difference between the ice actually taken and paid for and the six thousand tons. But the evidence shows that for a part of the time the defendant was unable to furnish the plaintiff's quota of ice to the Mutual Ice Delivery Company. It is clear, therefore, that in so far as the defendant was unable to furnish the ice from day to day and failed to furnish it or cause it to be furnished, it is not entitled to pay therefor, and the jury ought to have been so instructed; but instead of doing this the court gave Instruction No. 2, asked for by the defendant, which told the jury, among other things, that under the contract the plaintiff was bound to pay the defendant for six thousand tons of ice for the year ending November 30, 1899, whether the plaintiff took that quantity of ice from the defendant or not.

It will not be necessary to consider specially the other assignments of error, as what has been said in construing the contract of December 1, 1898, and in determining the measure of damages to which either party may be entitled for the alleged breaches of that agreement, settles the principles upon which the case is to be tried, so that questions involved in those assignments of error are not likely to arise upon the next trial.

The judgment must be reversed, the verdict set aside, and the cause remanded for a new trial to be had in accordance with the views expressed in this opinion.

*Reversed.*